OPINION
{¶ 1} The appellant, Nathan Newell, appeals the September 22, 2003 judgment of the Marion Municipal Court, sentencing him on his conviction for street racing.
 {¶ 2} On March 3, 2003, at approximately 11:30 p.m. Newell was stopped by Patrolman Shane Gosnell of the Marion City Police Department and charged with street racing in violation of Marion Municipal Traffic Code 333.08. Newell entered a plea of not guilty, and the matter proceeded to a jury trial on September 17, 2003. During the trial, only two witnesses testified: Patrolmen Gosnell testified on behalf of the prosecution, and Newell testified on his own behalf. At the conclusion of the trial, the jury found Newell guilty of street racing, and the trial court sentenced him accordingly. This appeal followed, and Newell now asserts four assignments of error, which we elect to address out of turn for ease of discussion.
The record contains insufficient evidence to supportdefendant-appellant's conviction.
 Defendant-appellant's conviction is contrary to the manifestweight of evidence.
 The trial court erred to the prejudice of defendant-appellantby permitting officer gosnell to testify regarding the allegedstatements regarding racing.
 Defendant-appellant received prejudicially ineffectiveassistance of counsel in violation of his sixth and fourteenthamendment rights, as well as his rights under Section 10, Article1, Ohio Constitution.
 Third Assignment of Error {¶ 3} In his third assignment of error, Newell asserts that the trial court erred in permitting Patrolman Gosnell to testify regarding certain statements made immediately preceding his stop of Newell for street racing. The statements with which Newell is concerned consist of the following:
Patrolman Gosnell: * * * I heard a person yell, "Hey, do youwant to drag, or race to the next light?" * * * I then heardanother individual say," Yes," and they began[.]
 {¶ 4} Newell contends that the officer should not have been allowed to testify as to these statements because they were hearsay by unidentified declarants, more specifically, that the officer could not identify Newell as the speaker.
 {¶ 5} Our review of this issue begins by noting that no objection to this testimony was made during the trial. Having failed to raise this perceived error at trial when the court was in the best position to correct any such error, Newell has waived all but plain error in this regard. In order to find plain error, Crim.R. 52(B) requires that there be a deviation from a legal rule, the error must be an "obvious" defect in the trial proceedings, and the error must have affected a defendant's "substantial rights." State v. Barnes, 94 Ohio St.3d 21, 27,2002-Ohio-68. However, plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id.
 {¶ 6} The Rules of Evidence forbid the use of hearsay evidence at trial absent a recognized exception. Evid.R. 802. Hearsay evidence is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). However, an admission by a party-opponent is not considered hearsay. Evid.R. 801(D)(2). A statement by a party opponent is that which is "offered against a party and is (a) his own statement, in either his individual or a representative capacity[.]" Evid.R. 801(D)(2). In addition, the Evidence Rules include an exception to hearsay for a person's then existing, mental, emotional, or physical condition. Evid.R. 803(1). This exception is defined as "[a] statement of the declarant's then existing state of mind * * * (such as intent, plan, motive, [and] design * * *)[.]" Evid.R. 803(1).
 {¶ 7} In the case sub judice, Patrolman Gosnell testified that he was writing reports when he heard someone ask another whether he wanted to race. He then testified that he heard another person say, "yes," in response. The officer was able to hear these statements because his window was cracked. When he looked in the direction of the voices, he saw a blue vehicle in the left lane and a tan vehicle in the right lane sitting side by side at an intersection where the light was red.
 {¶ 8} He then saw the light change to green and the vehicles "took off." One of the cars also squealed its tires, but the officer was unsure of which vehicle made this squeal. He further testified that the two cars "gave it plenty of gas" and accelerated at a rate greater than that normally required to move a vehicle from a stopped position. However, in the short interval between the light changing colors and his stop of the vehicles, Patrolman Gosnell was not able to ascertain the speed of either vehicle. The officer followed the vehicles and stopped them at a different intersection. At this point, Newell's vehicle, the blue one, was now in the right hand lane in front of the tan vehicle driven by a Mr. Neal with its right turn signal on. When questioned about what the officer had heard, Newell and Neal told him "that they were just joking around[.]"
 {¶ 9} Given this evidence, a reasonable inference could be made that the statements came from Newell and Neal. Although who made the first comment regarding racing and who responded to this question was unknown, Patrolman Gosnell recognized two different voices, one asking and one responding. Further, when he looked in the direction of the comments, the only two vehicles present were those belonging to Newell and Neal, who were located side by side. In addition, when the light changed to green, these vehicles accelerated at a higher speed than that normally required to accelerate and one vehicle even squealed its tires. In addition, their response to the officer that "they were just joking" reflects an admission that they were the ones who collectively made these statements. Thus, at least one of these statements could be attributed to Newell and admissible as a party-opponent admission. Moreover, these statements showed the intent, plan, and motive of Newell and Neal to engage in street racing at that time, which qualify as exceptions to the hearsay rule pursuant to Evid.R. 803(3). Therefore, we find no error in their admission and certainly none rising to the level of plain error. Accordingly, the third assignment of error is overruled.
 First and Second Assignments of Error {¶ 10} Newell asserts in his first assignment of error that there was insufficient evidence to support his conviction. In addition, Newell contends in his second assignment of error that his conviction was contrary to the manifest weight of the evidence. As these assignments of error involve questions regarding the evidence presented during the trial, they will be discussed together.
 {¶ 11} The Ohio Supreme Court has set forth a test to determine whether the evidence submitted in a trial was sufficient for the trier of fact to determine a crime had been proven beyond a reasonable doubt. See State v. Jenks (1991),61 Ohio St.3d 259. In Jenks, the Court outlined the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence admitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt.
Id. at paragraph two of the syllabus.
 {¶ 12} In contrast, when reviewing whether the verdict was against the manifest weight of the evidence, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Adkins (Sept. 24, 1999), 3rd Dist. No. 5-97-31, unreported, 1999 WL 797144, citingState v. Martin (1983), 20 Ohio App.3d 172, 175; State v.Thompkins (1997), 78 Ohio St.3d 380, 387. When making this determination, there are eight factors to consider, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary." State v. Apanovitch
(1987), 33 Ohio St.3d 19, 23-24, citing State v. Mattison
(1985), 23 Ohio App.3d 10, syllabus.
 {¶ 13} Here, Newell was charged with street racing in violation of Marion Municipal Traffic Code 333.08. This section prohibits a person from engaging in street racing. Street racing is defined by section 333.08(A) as "the operation of two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to out-distance each other." Thus, the prosecution had to prove beyond a reasonable doubt that Newell operated his vehicle from a point side by side with another vehicle at accelerating speeds in a competitive attempt of each to outdistance the other.
 {¶ 14} As previously discussed, Patrolman Gosnell testified that he heard one person ask another if he wanted to race and that the other person answered in the affirmative. This conversation demonstrated their intent to engage in a competitive attempt to outdistance each other. He also witnessed Newell and Neal operating vehicles side by side at the red light and that when the light turned green, each vehicle accelerated at a rate greater than normally necessary to begin driving from a stopped position, including hearing one of the vehicles squeal its tires. Although the officer was not able to ascertain their respective rates of speed to determine whether either was driving in excess of the posted speed limit, he was able to testify that their acceleration was higher than normal, which is all that is required by section 333.08. Thus, when construing this evidence in a light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, the first assignment of error is overruled.
 {¶ 15} As for the weight of the evidence, in light of the evidence previously discussed, we do not find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Patrolman Gosnell was very certain in his testimony, and the testimony he provided was sufficient to find beyond a reasonable doubt that Newell engaged in street racing. Furthermore, although Newell gave a conflicting version of events, wherein he denied that he made any statements at the red light, denied stating that he told the officer that they were "just joking around," and denied accelerating at speeds in a competitive attempt to outdistance Neal, the credibility of his testimony is questionable.
 {¶ 16} First, his testimony was self-serving, given the fact that he was attempting to avoid a conviction. Second, the prosecution was able to cast doubts as to the credibility of his version of events. For instance, Newell testified on direct that he was coming from work at Marion Steel to his father's home on Chestnut Street. However, during his cross-examination, he changed his version of events when the prosecution questioned him as to why he would be turning right on Church Street if he was going to Chestnut Street. Instead, Newell testified that he was on his way to a friend's house on Farming Street before going to his father's. Then, he admitted that remaining on the street where he was stopped by the officer would have led him directly to Farming Street, a more logical route of travel than turning right on Church Street would have been. In addition, Newell admitted that he knew Neal from school and that the two had worked together at Marion Steel for approximately four years, which would increase the likelihood that he was racing with Neal given their familiarity with one another. Therefore, his conviction was not against the manifest weight of the evidence, and the second assignment of error is overruled.
 Fourth Assignment of Error {¶ 17} In his final assignment of error, Newell contends that his trial counsel was ineffective. The State of Ohio has adopted the two-part test for determining whether a criminal defendant has been denied the effective assistance of counsel established by the United States Supreme Court in Strickland v. Washington
(1984), 466 U.S. 668. See State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. "A convicted defendant must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Jones (Sept. 27, 2000), 3rd
Dist. No. 2-2000-07, unreported, 2000 WL 1420271, quotingStrickland, 466 U.S. at 688, 694.
 {¶ 18} Here, Newell asserts that trial counsel was ineffective because he failed to object to Patrolman Gosnell's testimony regarding the statements at issue in the third assignment of error. However, as determined in our discussion of the third assignment of error, these statements were admissible. Thus, we do not find that the failure to object to them fell below an objective standard of reasonableness, the first requirement of Strickland. Therefore, the fourth assignment of error is overruled.
 {¶ 19} For these reasons, the judgment of the Marion Municipal Court is affirmed.
Cupp and Bryant, JJ., concur.